# IN THE COURT OF APPEALS OF IOWA

No. 25-0839
Filed August 6, 2025

**IN THE INTEREST OF K.S.,**
**Minor Child,**

**K.S.-M., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.


　　　A mother appeals the juvenile court's combined adjudicatory and dispositional order.  **AFFIRMED.**


　　　Joseph C. Pavelich, Iowa City, for appellant mother.

　　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　　Sara Strain Linder, Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.


　　　Considered without oral argument by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

A mother appeals the juvenile court's combined adjudicatory and dispositional order finding her one-year-old child in need of the court's assistance under Iowa Code section 232.96A(3) and (14) (2025).[1] She challenges the child's adjudication and continued removal from her custody. We affirm upon our de novo review of the record.

I.      **Background Facts and Proceedings**

The mother has a long history with the Iowa Department of Health and Human Services due to her struggles with domestic violence, mental health, and substance use. After a series of child protective assessments that started in 2011, the mother eventually lost custody of her three oldest children. One child was placed in his father's custody, and the mother's parental rights to the other two children were terminated in 2019. The mother's youngest child—and the subject of this appeal—was born in January 2024. By the end of December, the department had received a report that the mother was using methamphetamine while caring for the child and that she threatened the child's father with a knife in the child's presence.

A child protective worker from the department, in the company of law enforcement, made an unannounced visit to the mother's home to investigate the report. The mother answered the door but refused to talk to the worker, who was able to briefly see the child. Law enforcement told the worker that the residence was a known drug house. After that short encounter, the mother avoided meeting

_____

[1] The child's father stipulated to the adjudication and does not appeal.

with the worker in person, although she responded to his calls and text messages. She admitted using methamphetamine once during her pregnancy with the child and again in October but denied any use in December. Two days into the department's investigation, the mother took the child to Florida and did not return with him until mid-January 2025. Meanwhile, the State petitioned to have the child found in need of the court's assistance and removed from his parents' custody. The juvenile court entered a temporary removal order, citing the mother's lack of cooperation with the department and her methamphetamine use.

About three weeks later, the mother and child appeared at the removal hearing. The juvenile court suspected "the mother was under the influence of an illegal substance," noting that she was argumentative and twitching. While the mother met with her attorney outside the courtroom, the court ordered the relative placement to leave with the child. The child stayed in two different relative placements until the department determined "the emotional volatility of the case participants and discord between families" necessitated "a more neutral placement" with a foster family.

The mother missed the adjudicatory hearing at the end of February. So the juvenile court set a combined adjudicatory and dispositional hearing for April. By that hearing, the mother was participating in some services—including visits with the child, which went well. She had completed a substance use evaluation and was scheduled to start treatment. She had also submitted to a drug test for the department—which was negative for all substances—although she missed four drug tests before that. The mother testified that she planned to take a hair test the day after the hearing. And she had a mental health evaluation scheduled to

address her past diagnoses, which included borderline personality disorder, anxiety, depression, and post-traumatic stress disorder. But at the continued hearing two weeks later, the mother had still not taken the hair test. She had, however, started substance use treatment and obtained the mental health evaluation.

During her testimony at the hearings, the mother maintained that she had last used methamphetamine in October 2024 when the child was with the maternal grandmother. But the child protective worker testified that the grandmother denied watching the child then. And the child's father testified that he and the mother used methamphetamine together on Christmas Eve when they were at his father's house with the child. He also testified that in February, when he was returning some of the mother's things to her, she "sucker punched" him in the face.

The juvenile court found that the mother "was difficult to follow" at the hearing, "as she would go on tangents and not directly respond to questions." She was also "argumentative and challenging to manage." With those observations, the court determined "the mother has been using methamphetamine while caring" for the child. The court accordingly adjudicated the child in need of the court's assistance under Iowa Code section 232.96A(3) and (14) and found that continued removal was necessary to ensure his safety. The mother appeals.

## II.     Standard of Review

We review child-in-need-of-assistance proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). In reviewing the proceedings, we give weight to the juvenile court's findings of fact, but we are not bound by them. *Id.* "Our primary concern is the [child's] best interests." *Id.*

### III.   Analysis

The mother challenges both grounds for the child's adjudication, which the State must prove by clear and convincing evidence.  *See* Iowa Code § 232.96(2). Because adjudication may affect later proceedings, we will address each ground. *See J.S.*, 846 N.W.2d at 41.

Iowa Code section 232.96A(3)(b) requires proof that the child "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." And section 232.96A(14) requires proof that the child's parent suffers from drug use "that results in the child not receiving adequate care or being imminently likely not to receive adequate care."  The mother argues the State failed to prove the child was imminently likely to either suffer harmful effects or receive inadequate care because, while she may have used methamphetamine in the past, there was no evidence of current use.

The phrase "imminently likely" is interpreted liberally and does not require harm "to be on the verge of happening before adjudicating a child as one in need of assistance." *J.S.*, 846 N.W.2d at 43.  We also interpret "harmful effects" broadly to encompass harm to the child's "physical, mental, or social well-being." *Id.* at 41–42.  And "adequate care" for a child "means meeting the child's essential needs," one of which is "a *safe* home." *In re H.W.*, 961 N.W.2d 138, 144 (Iowa Ct. App. 2021).   Under these definitions, we conclude that sufficient evidence supported the child's adjudication under both grounds.

The mother admitted that she used methamphetamine in October 2024, and the father testified that he used methamphetamine with the mother on Christmas

Eve. The mother avoided meeting with the child protective worker in person after the department opened its investigation into her reported use, going so far as to leave the state with the child. When she returned to Iowa, the mother continued to avoid drug testing, providing just one negative urine test for the department at the beginning of April.[2] "We presume these missed drug tests would have resulted in positive tests." *In re C.F.*, No. 20-1067, 2020 WL 6482073, at *1 (Iowa Ct. App. Nov. 4, 2020) (citation omitted) (collecting cases). The child protective worker, juvenile court, and guardian ad litem also observed behavioral indicators of substance use, including erratic communication and twitching.

As our supreme court has recognized, a "parent's methamphetamine addiction by itself can result in 'harmful effects' to the child, thereby justifying state intervention to protect the child" under section 232.96A(3)(b). *J.S.*, 846 N.W.2d at 37. And although the child protective worker testified the child was "very well taken care of" when he was removed, the mother's long history of drug use and recent circumvention of drug testing—along with the outward signs of drug use—leads us to conclude the child was at imminent risk of receiving inadequate care, as required by section 232.96A(14). *See In re O.D.*, No. 23-0013, 2023 WL 3089878, at *2 (Iowa Ct. App. Apr. 26, 2023) (finding an imminent risk under near-identical circumstances); *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous

_____

[2] The mother had two negative urine tests for her substance-use provider. But the child protective worker testified that "urinalysis testing for methamphetamine is not necessarily a great indicator, because methamphetamine gets out of the body generally quickly."

environment for children."). We accordingly affirm the child's adjudication under both grounds.

As for the child's continued removal after the dispositional hearing, the mother contends that removal is not the least restrictive disposition and asks that we return the child to her custody. *See* Iowa Code § 232.99(4) (requiring the juvenile court to "make the least restrictive disposition appropriate considering all the circumstances of the case"); *id.* § 232.102(4)(a) (directing that "[w]henever possible the court should permit the child to remain at home with the child's parent"). We agree with the State that "the juvenile court's disposition of continued removal was the least restrictive appropriate disposition as the mother has only just begun to engage in services and provide negative drug tests to demonstrate her abstention from substance use." The mother's initial obstinance with the department "prevented the juvenile court from monitoring if the necessary progress had been made to return the child" to her custody. *In re O.P.*, No. 23-0464, 2023 WL 3612387, at *2 (Iowa Ct. App. May 24, 2023). "Without 'insight or recognition of changes that need to be made,'" we agree with the juvenile court that the child was still at risk of adjudicatory harm if returned to the mother's custody. *In re Q.C.*, No. 24-1469, 2024 WL 5153933, at *4 (Iowa Ct. App. Dec. 18, 2024) (citation omitted).

While we are sympathetic to the mother's desire to have her son back in her custody, and we are encouraged by her recent progress and positive visits, we must put the child's "best interest at the forefront." *In re A.C.*, No. 24-1689, 2025 WL 52844, at *4 (Iowa Ct. App. Jan. 9, 2025). To ensure a safe environment for

the child, we conclude that "additional time to show meaningful sobriety is necessary." *Id.*

**AFFIRMED.**